UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

REPSOL YPF, S.A.,                                          :

                      Plaintiff,        :        12 Civ. 4018 (TPG)

       - against -                              :

THE REPUBLIC OF ARGENTINA,              :

                   Defendant.        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN SUPPORT OF<br>DEFENDANT'S MOTION TO DISMISS THE COMPLAINT

Edward Scarvalone
DOAR RIECK KALEY & MACK
217 Broadway, 7th Floor
New York, NY 10007
Tel. (212) 619-3730

Jonathan A. Willens
JONATHAN A. WILLENS LLC
217 Broadway, 7th Floor
New York, NY 10007
Tel. (212) 619-3749

*Attorneys for Defendant*
*The Republic of Argentina*

# TABLE OF CONTENTS

Preliminary Statement.................................................................................................1

Complaint Allegations and Background Facts ...............................................................4

ARGUMENT ...............................................................................................................6

POINT I:     THE COURT LACKS SUBJECT MATTER JURISDICTION
             BECAUSE THERE IS NO EXCEPTION TO FSIA IMMUNITY HERE ......................6

       A.  Jurisdictional Principles ...............................................................................6

       B.  The Commercial Activity Exception Does Not Apply ..................................7

POINT II:    THERE IS NO PERSONAL JURISDICTION OVER THE DEFENDANTS ........13

POINT III:   THE ACT OF STATE DOCTRINE
             ALSO REQUIRES DISMISSAL ...................................................................14

POINT IV:    THE INJUNCTION SOUGHT BY REPSOL DOES NOT SATISFY
             THE TRADITIONAL RQUIREMENTS FOR INJUNCTIVE RELIEF,
             LET ALONE THE REQUIREMENTS OF THE FSIA ......................................17

POINT V:     THE COMPLAINT SHOULD BE DISMISSED
             BECAUSE OF IMPROPER VENUE ...............................................................20

       A.  Venue is Improper Under the FSIA ...........................................................20

       B.  The Securities Laws Do Not Provide Venue in this District ......................22

       C.  The Complaint Should Be Dismissed for Lack of Venue............................23

CONCLUSION............................................................................................................25

# TABLE OF AUTHORITIES

**CASES:**

*Argentine Republic v. Amerada Hess Shipping Corp.*,
    488 U.S. 428 (1989)..................................................................................... 22

*Banco Nacional de Cuba v. Sabbatino*,
    376 U.S. 398 (1964)................................................................................. 14, 16

*Bigio v. Coca-Cola Co.*,
    239 F.3d 440 (2d Cir. 2000)........................................................................ 15

*Braka v. Bancomer, S.N.C.*,
    762 F.2d 222 (2d Cir. 1985)..................................................................... 15, 16

*Buchheit v. United Air Lines. Inc.*,
    202 F. Supp. 811 (S.D.N.Y. 1962) ............................................................. 24

*Cabiri v. Gov't of Republic of Ghana*,
    165 F.3d 193 (2d Cir. 1999)......................................................................... 6

*Callejo v. Bancomer, S.A.*,
    764 F.2d 1101 (5th Cir. 1985). .................................................................. 15

*Cannon v. Newmar Corp.*,
    210 F. Supp.2d 461 (S.D.N.Y. 2002)........................................................... 23

*Cargill Int'l S.A. v. M/T Pavel Dybenko*,
    991 F.2d 1012 (2d Cir. 1993)................................................................... 13, 14

*Commissions Imp. Exp. S.A. v. Republic of the Congo*,
    2012 WL 1468486 (S.D.N.Y. Apr. 27, 2012)........................................... 20, 24

*Concesionaria DHM, S.A. v. Int'l Fin. Corp.*,
    307 F. Supp. 2d 553 (S.D.N.Y. 2004)......................................................... 21

*Cont'l Cas. Co. v. Argentine Republic*,
    2012 WL 3985412 (E.D. Va. Sept. 11, 2012)............................................. 21

*Cortec Indus. v. Sum Holding, L.P.*,
    949 F.2d 42 (2d Cir. 1991)........................................................................... 4

*Cottman Transmission Sys. v. Martino*,
    36 F.3d 291 (3d Cir. 1994).......................................................................... 21

*De Letelier v. Republic of Chile*,
    748 F.2d 790 (2d Cir. 1984)........................................................................ 8

*Drexel Burnham Lambert Group Inc. v. Comm. of Receivers for A.W. Galadari*,
    12 F.3d 317 (2d Cir. 1993)......................................................................... 11

*EM Ltd. v. Republic of Argentina*,
    473 F.3d 463 (2d Cir. 2007)....................................................................... 10

*Falcoal, Inc. v. Turkiye Komur Isletmeleri Kurumu*,
    660 F. Supp. 1536 (S.D. Tex. 1987) .......................................................... 20

*Filetech S.A. v. France Telecom S.A.*,
    157 F.3d 922 (2d Cir. 1998).......................................................................... 4

*First Nat. City Bank v. Banco Nacional de Cuba*,
    406 U.S. 759 (1972) ................................................................................... 14

*GAF Corp. v. Milstein*,
    453 F.2d 709 (2d Cir. 1971)................................................................... 17, 18

*Garb v. Republic of Poland*,
    440 F.3d 579 (2d Cir. 2006)....................................................... 7, 8, 9, 10, 12

*Goldlawr, Inc. v. Heiman*,
    369 U.S. 463 (1962) ................................................................................... 23

*Guirlando v. T.C. Ziraat Bankasi A.S.*,
    602 F.3d 69 (2d Cir. 2010)......................................................................... 10

*Gulf Ins. Co. v. Glasbrenner*,
    417 F.3d 353 (2d Cir. 2005).................................................................. 20, 21

*Hunt v. Mobil Oil Corp.*,
    550 F.2d 68 (2d Cir. 1977)........................................................................... 9

*ICN Pharmaceuticals, Inc. v. Khan*,
    2 F.3d 484 (2d Cir. 1993)................................................................. 17, 18, 19

*Kensington Int'l Ltd. v. Itoua*,
    505 F.3d 147 (2d Cir. 2007)........................................................ 6, 10, 11, 12

*Konowaloff v. Metro. Museum of Art, New York, N.Y.*,
    2012 WL 6573898 (2d Cir. Dec. 18, 2012) ................................................ 14

*Morales v. Quintel Entertainment, Inc.*,
    249 F.3d 115 (2d Cir. 2001)....................................................................... 17

*Nizami v. Woods*,
 263 F. Supp. 124 (S.D.N.Y. 1967) ................................................................ 24

*NYSA-ILA Pension Trust Fund v. Garuda Indonesia*,
 7 F.3d 35 (2d Cir. 1993) ............................................................................ 7

*Oceanic Exploration Co. v. Conocophillips, Inc.*,
 2007 WL 420186 (D.D.C. Feb. 5, 2007) ...................................................... 22

*Olberding v. Illinois Cent. R.R.*,
 346 U.S. 338  (1953) .................................................................................. 21

*Republic of Argentina v. Weltover, Inc.*,
 504 U.S. 607 (1992) ............................................................................... 9, 11

*Republic of Austria v. Altmann*,
 541 U.S. 677 (2004) ................................................................................. 15

*Rogers v. Petroleo Brasileiro, S.A.*,
 673 F.3d 131 (2d Cir. 2012) ...................................................................... 10

*Rondeau v. Mosinee Paper Corp.*,
 422 U.S. 49 (1975) ................................................................................... 17

*Rong v. Liaoning Province Gov't*,
 452 F.3d 883 (D.C. Cir. 2006) .................................................................... 9

*Saudi Arabia v. Nelson*,
 507 U.S. 349 (1993). ............................................................................... 6, 8

*Spar. Inc. v. Info. Resources, Inc.*,
 956 F.2d 392 (2d Cir. 1992) ...................................................................... 23

*Tannenbaum v. Rabin*,
 1996 WL 75283 (E.D.N.Y. Feb. 13, 1996) ................................................... 22

*Transatlantic Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp.*,
 204 F.3d 384 (2d Cir. 2000) ....................................................................... 7

*Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*,
 1987 WL 15129 (S.D.N.Y. July 29, 1987) .................................................... 23

*Treadway Cos., Inc. v. Care Corp.*,
 638 F.2d 357 (2d Cir. 1980) ............................................................. 17, 18, 19

*U.S. Aviation Underwriters, Inc. v. Dassault Aviation*,
    2005 WL 2403724 (E.D. Ark. Sept. 28, 2005) ................................................ 22

*U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.*,
    241 F.3d 135 (2d Cir. 2001) ................................................................ 21

*Underhill v. Hernandez,*
    168 U.S. 250 (1897) ........................................................................ 15

*USX Corp. v. Adriatic Ins. Co.*,
    345 F.3d 190 (3d Cir. 2003) ................................................................ 22

*Verlinden B.V. v. Central Bank of Nigeria,*
    461 U.S. 480 (1983) ..................................................................... 6, 13

*Virtual Countries, Inc. v. Republic of South Africa,*
    300 F.3d 230 (2d Cir. 2002) ........................................................... 11, 13

*W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l,*
    493 U.S. 400 (1990) ........................................................................ 15

*Wye Oak Tech., Inc. v. Republic of Iraq,* 1:09CV793 (AJT/JFA),
    2010 WL 2613323 (E.D. Va. June 29, 2010) ................................................. 24

**STATUTES:**

15 U.S.C. § 78*l* ........................................................................... 17, 19

28 U.S.C. § 1330 ............................................................................... 13

28 U.S.C. § 1391(f) ..................................................................... 20, 22, 24

28 U.S.C. § 1406(a) ........................................................................ 20, 23

28 U.S.C. §§ 1602-1611 (Foreign Soverign Immunities Act) ............................... *passim*

28 U.S.C. § 1603(d) ......................................................................... 8, 9

28 U.S.C. § 1604 ............................................................................... 6

28 U.S.C. § 1605(a)(2) ................................................................. 7, 9, 12

Argentine Law 21,499 (Hydrocarbons Sovereignty Law) ............................... 1, 4, 5, 18, 19

**LEGISLATIVE HISTORY:**

House Report No. 94-1487 ...................................................................................... 8, 17

**TREATISES:**

14D C. Wright and A.  Miller, Fed. Prac. & Proc. Juris. § 3827 (3d ed.) .................................... 23

Defendant the Republic of Argentina ("the Republic") respectfully submits this memorandum in support of its motion to dismiss the first amended complaint ("Complaint") of plaintiff Repsol YPF, S.A. ("Repsol"), pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(3), and 12(b)(6).

## Preliminary Statement

Repsol is a Spanish company suing a foreign sovereign state, the Republic of Argentina, here in the Southern District of New York.  This is but one of several lawsuits and other legal proceedings that Repsol has filed arising out of the Republic's declaration of public interest, decision to expropriate, and temporary occupation[1] (the "Expropriation Process") of Repsol's controlling interest in YPF S.A. ("YPF" or the "Company"), which is the major oil and gas company in Argentina.  The Expropriation Process was authorized by legislation that took effect on May 7, 2012 (Law 26,741, the "Hydrocarbons Sovereignty Law") to help Argentina ensure that its future energy needs are met.

Repsol has reacted to the Hydrocarbons Sovereignty Law by initiating lawsuits against the Republic, YPF and companies doing business with YPF.[2]  It has also initiated actions against the Republic and YPF in Argentina and against YPF in Spain, as well as arbitration proceedings against the Republic under the auspices of the International Centre for the Settlement of Investment Disputes.

---

[1]  "Temporary occupation" is an Argentine legal procedure regulated by the Expropriation Law (Law 21,499).  In general terms, it allows a State entity to take temporary control of private property in the public interest.

[2]  This lawsuit is just one three lawsuits brought by Repsol that are pending in this court house.  *See Repsol YPF, S.A. and Texas Yale Capital Corp. v. Republic of Argentina,* No. 12-3877 (TPG); *Repsol, S.A. v. Chevron Corp.,* No. 12-8799 (TPG).  Repsol filed another lawsuit in New York State court.  *Repsol, S.A. v. The Bank of New York Mellon and YPF Sociedad Anonima*, Index No. 652653/2012 (Sup. Ct., N.Y. Cty.).

In this lawsuit, Repsol alleges that the Republic, after taking control of Repsol's controlling shareholder interest in YPF by virtue of the Hydrocarbons Sovereignty Law, did not comply with a disclosure obligation imposed by Section 13(d) of the Securities Exchange Act of 1934, 15 U.S.C. § 78m(d).  Section 13(d) is the U.S. securities law applicable to the potential change in corporate control presented by a tender offer, and applies in certain circumstances to shareholders who acquire more than 5% of a registered class of an issuer's equity securities.

The very premise of Repsol's lawsuit – that there has been inadequate information disclosed to the market about the Republic's Expropriation Process and YPF's business operations – is ludicrous.  As will be seen below, Argentina set forth its policy objectives in the Hydrocarbons Sovereignty Law.  YPF then filed an English translation of that law with the Securities and Exchange Commission ("SEC").  YPF and certain shareholders have also provided dozens of disclosures to the SEC, all of them available on the SEC's EDGAR database.  These public statements provide ample information about the Hydrocarbons Sovereignty Law, the reasons and policies underlying the Expropriation Process, changes to voting rights of the shares, changes to management and governance of YPF (including new appointments to the board of directors), and the Company's current and future business operations.  YPF has consistently made timely disclosures to the SEC, including disclosure of its 2013-2017 strategic business plan.  Accordingly, disclosures by Argentina under Section 13(d) would add nothing material to what has already been publicly disclosed (and will continue to be disclosed) by others.

In any event, Repsol's claim is flawed on several legal grounds mandating dismissal.  First, the Court lacks subject matter jurisdiction.  As a foreign sovereign, the Republic is immune from suit unless the Complaint establishes an applicable exception to sovereign immunity under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-1611.  Here, the

immunity exception invoked by Repsol – the commercial-activities exception – does not apply. Repsol's claim is not based upon any commercial activity by the Republic, but rather is based upon (i) the Republic's Expropriation Process of YPF shares which is, by definition, a sovereign activity rather than a commercial one, and (ii) the Republic's sovereign decision not to file disclosures under Section 13(d) ("13D Reports") but rather to make known its policies for YPF through the Hydrocarbons Sovereignty Law.  The decision not to file a Section 13D Report is not commercial activity, but a sovereign decision concerning a core governmental function.

The Complaint is rife with other legal defects that mandate dismissal.  The action is barred by the Act of State doctrine, which prohibits this Court from passing judgment on the policies and decisions taken by a foreign government on its home soil.  Moreover, the injunctive relief that Repsol seeks – a mandatory injunction requiring the Republic to file disclosure forms with the SEC under Section 13(d) – is not available, because Repsol cannot establish the essential requirements necessary for such injunctive relief.  The irreparable harm requirement cannot be satisfied because the injunction that Repsol seeks would not further the purposes of Section 13(d), which is intended to address *potential* changes in corporate control – not changes in control that have already been effected through the Expropriation Process.  Moreover, because there has already been abundant public disclosure, via Form 6-K's filed with the SEC ("6-Ks") and other reports about the Expropriation Process and YPF's business operations, the 13D disclosure sought by Repsol would not add anything meaningful to what has already been publicly disclosed.  Finally, Repsol has filed this lawsuit in the wrong court.  Because the claim arose in Argentina, not New York, venue is proper only in the District Court for the District of Columbia.  For all of these reasons, the Complaint must be dismissed.

### Complaint Allegations and Background Facts[3]

YPF is a publicly-held limited liability stock company (*sociedad anónima*) organized under Argentine law.  Complaint ¶ 10.  Its Class D shares are registered pursuant to Section 12 of the Exchange Act, 15 U.S.C. 78*l*, and some of those shares trade on the New York Stock Exchange in the form of ADRs under the symbol "YPF." *Id.*

Repsol is a publicly-held limited liability company (*sociedad anónima*) organized under Spanish law and headquartered in Madrid.  *Id.* ¶ 8.  Repsol is a holder of YPF Class D shares.  *Id.*  In 1999, Repsol acquired a controlling interest in YPF through its ownership of more than 50% of YPF's Class D shares.  *Id.*

On April 16, 2012, the Republic announced and delivered proposed legislation providing for the expropriation of 51% of YPF's Class D shares from Repsol.  *Id.* ¶ 18.  On that same day, the Republic intervened in YPF's operations by means of an emergency executive decree, *id.,* that was subsequently ratified by both chambers of the Congress.  The legislation was signed into law on May 4, 2012 and went into effect on May 7, 2012.  *Id.* ¶ 19.

The Hydrocarbons Sovereignty Law[4] addresses Argentina's sovereignty over the supply of hydrocarbons and the expropriation of YPF's Class D shares from Repsol.  Title I of the Law declares Argentina's self-sufficiency in the supply of hydrocarbons to be a national public interest and a priority for the Republic, and states several principles of the Republic's

---

[3]   While the facts in the Complaint are assumed to be true on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Republic disagrees with many of the allegations and is not conceding any allegation at this stage.  In deciding Argentina's motion to dismiss, the Court may consider publicly filed documents, matters of which judicial notice may be taken, and documents that plaintiff knew of when bringing suit.  *See Filetech S.A. v. France Telecom S.A.*, 157 F.3d 922, 932 (2d Cir. 1998) (motion to dismiss under Fed. R. Civ. P. 12(b)(1)); *Cortec Indus. v. Sum Holding, L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (motion under Fed. R. Civ. P. 12(b)(6)).

[4]   The Complaint refers to the same law as "the Expropriation Law."

hydrocarbon policy.[5]  Title II creates a Federal Council of Hydrocarbons tasked with promoting the Law's objectives.  Title III declares 51% of YPF's Class D shares, held by Repsol, subject to expropriation by the Republic; finds that the expropriation is in the public interest; and provides that the compensation of the expropriated Class D shares will be determined in accordance with the provisions of Argentine Law No. 21,499 and the valuation determined by the National Court of Appraisal.  Finally, with the aim of guaranteeing YPF operational continuity, Title III of the Law also provides for the temporary occupation of the shares until the Expropriation Process is completed.

The Republic has not yet taken title to the Class D shares.  Complaint ¶ 20.  However, as the Complaint alleges, the Law grants the Republic the power to exercise all voting rights on the expropriated shares, and the Republic has taken actions demonstrating its voting control, including voting to appoint directors to YPF's board of directors at the June 4, 2012 shareholders meeting. *Id.*  The Complaint further alleges that when the Hydrocarbons Sovereignty Law took effect on May 7, 2012, the Republic became the "beneficial owner" of more than 5% of YPF's Class D shares, triggering application of the disclosure requirements provided by Section 13(d) of the Exchange Act.  *Id.* ¶ 23.  According to the Complaint, the official disclosure form for compliance with this statute, Schedule 13D, was not filed by the Republic within ten days of becoming beneficial owner or any time since then.  *Id.* ¶¶ 21, 23.  This non-disclosure is the only basis for the relief sought by Repsol in this action.  *Id.* ¶ 30.

The Complaint seeks only equitable relief, including an order directing the Republic "to file such a Schedule 13D with the SEC." *Id.* at 11 (Prayer For Relief).  To support this claim for relief, the Complaint alleges, "[Repsol] and other YPF shareholders

---

[5]   An English translation of the Hydrocarbons Sovereignty Law is attached to the 6-K filed by YPF immediately after the Law went into effect.  For the Court's convenience, a copy of that 6-K is attached to the accompanying declaration of Edward Scarvalone.

cannot make informed decisions with respect to their investments and participation" in YPF, a company that is "dominated and controlled" by the Republic. *Id*. ¶ 24. This "ongoing harm is compounded," the Complaint alleges, by the Republic's voting to appoint directors at the YPF shareholders meeting of June 4, 2012. *Id*. ¶ 25. The Complaint also alleges that investors have not yet been provided with "disclosures concerning Argentina's planned dividend policy for YPF," which is allegedly required by Section 13(d). *Id*. Repsol also demands to know the Republic's "plans" for YPF, such as plans to reorganize, recapitalize, sell or transfer the company or its assets. *Id*. ¶ 22. There is no allegation of irreparable harm.

## ARGUMENT

## POINT I

### THE COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE THERE IS NO EXCEPTION TO FSIA IMMUNITY HERE

#### A. Jurisdictional Principles

Under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1602-1611 (the "FSIA"), a foreign state is "presumptively immune from the jurisdiction of United States courts." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). "[U]nless a specified exception [set forth in the FSIA] applies, a federal court lacks subject-matter jurisdiction over a claim against a foreign state." *Id*. (citing *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 488 (1983); *see* 28 U.S.C. § 1604 ("a foreign state shall be immune from the jurisdiction of the courts of the United States . . . except as provided in sections 1605 to 1607 of this chapter"). Plaintiff bears the burden of demonstrating that this Court has jurisdiction under one of the statutory exceptions to FSIA immunity. *Kensington Int'l Ltd. v. Itoua*, 505 F.3d 147, 153 (2d Cir. 2007); *Cabiri v. Gov't of Republic of Ghana*, 165 F.3d 193, 196 (2d Cir. 1999).

- 6 -

Repsol has failed to meet its jurisdictional burden here.  The only exception invoked by the Complaint, the "commercial activity" exception, 28 U.S.C. § 1605(a)(2), *see* Complaint ¶ 12, does not apply here.

## B.  The "Commercial Activity" Exception Does Not Apply.

The FSIA's commercial activity exception, section 1605(a)(2), provides that –

(a)   A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case –
    . . .

(2)   in which the action is *based upon* [1] a commercial activity carried on in the United States by the foreign state; or upon [2] an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon [3] an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States . . .

28 U.S.C. § 1605(a)(2) (emphasis and brackets supplied).

Accordingly, "[a]s a threshold step in assessing plaintiffs' reliance on the 'commercial activity' exception, we must identify the act of the foreign sovereign State that serves as the basis for plaintiffs' claims."  *Garb v. Republic of Poland*, 440 F.3d 579, 586 (2d Cir. 2006).  The statutory requirement that the claim be "based upon" commercial activity means "those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case."  *Nelson*, 507 U.S. at 357.  The phrase thus requires a "degree of closeness" between the commercial activity and "the gravamen of the plaintiff's complaint."  *Kensington*, 505 F.3d at 156; *accord NYSA-ILA Pension Trust Fund v. Garuda Indonesia*, 7 F.3d 35, 38 (2d Cir. 1993) (requiring "significant nexus . . . between the commercial activity in this country upon which the exception is based and a plaintiff's cause of action").  The requisite "degree of closeness" is "considerably greater than common law causation requirements."  *Transatlantic Shiffahrtskontor GmbH v. Shanghai Foreign Trade Corp.*, 204 F.3d 384, 390 (2d Cir. 2000).

The gravamen of Repsol's complaint is that the Republic, after acquiring a controlling interest in YPF's Class D shares via the Hydrocarbons Sovereignty Law, did not make a disclosure required by a provision of U.S. securities law (Section 13(d), 15 U.S.C. § 78m(d)). This claim is not "based upon" any commercial activity, and does not satisfy any of the three clauses provided by the FSIA's commercial-activity exception, *see supra* at 7.

First Clause:  Commercial Activity Carried on in the United States by the Foreign State.  The First Clause of the exception does not apply here because neither the Expropriation Process nor the Republic's alleged nondisclosure under Section 13(d) constitutes "commercial activity."  That term is defined by the FSIA to mean "either a regular course of commercial conduct or a particular commercial transaction or act."  28 U.S.C. § 1603(d).  In determining whether a particular activity is commercial, courts look to "whether the activity is of the type an individual would customarily carry on for profit," *De Letelier v. Republic of Chile*, 748 F.2d 790, 797 (2d Cir. 1984), and whether the activity is sovereign – as distinguished from commercial – in nature, *Nelson*, 507 U.S. at 360 (considering whether activity is pursuant to "powers peculiar to sovereigns").  "[A] state is immune from the jurisdiction of foreign courts as to its sovereign or public acts."  *Id; accord Garb,* 440 F.3d at 587-88.[6]

---

[6]    The House Report accompanying the FSIA provided the following examples of "commercial activities":

> Activities such as a foreign government's sale of a service or a product, its leasing of property, its borrowing of money, its employment or engagement of laborers, clerical staff or public relations or marketing agents, or its investment in a security of an American corporation, would be among those included within the definition.

House Report No. 94-1487, 1976 U.S.C.C.A.N. 6604, 6615 (1976) ("H.R. 94-1487").

Here, the Expropriation Process of YPF's Class D shares by the Republic does not constitute commercial activity.  "Expropriation is a decidedly sovereign – rather than commercial – activity."  *Garb*, 440 F.3d at 586-87 (citing *Hunt v. Mobil Oil Corp*., 550 F.2d 68, 73 (2d Cir. 1977).  Argentina did not take control of YPF as an ordinary investor solely interested in profit, but rather as a sovereign nation seeking to control its natural resources and maximize its energy independence.  Accordingly, Repsol cannot maintain any claim here against the Republic based upon its expropriation of YPF's Class D shares, *id.; accord Rong v. Liaoning Province Gov't*, 452 F.3d 883, 889-90 (D.C. Cir. 2006).

Nor does the Republic's decision not to file a 13D Report constitute commercial activity.  A sovereign decision not to make a regulatory filing is not a "commercial" act, let alone a "regular course of commercial conduct."  28 U.S.C. § 1603(d).  An obligation to make a regulatory filing is fundamentally different from an obligation created by a commercial relationship or transaction, and has nothing to do with the commercial activities cited by Congress in the FSIA's legislative history – *i.e*., selling, leasing, borrowing, employing, or investing in an American corporation.  *See supra* at 8 n.6 (citing H. Rep. 94-1487).  Repsol's claim here is not based upon any such activity by the Republic.  Not surprisingly, we have found no reported case, let alone a decision of the Supreme Court or Second Circuit Court of Appeals, holding that a foreign sovereign, in its capacity as corporate shareholder, engages in "commercial activity" by not making a disclosure under U.S. securities laws.[7]

Moreover, the disclosure obligation alleged by Respol arises only as a result of the Expropriation Process.  Because expropriation is an inherently sovereign act, so, too, is the

---

[7]   While a sovereign's issuing or selling of debt instruments or other securities may constitute commercial activity under § 1605(a)(2), *see Republic of Argentina v. Weltover, Inc.,* 504 U.S. 607 (1992), Repsol's claim is not based upon any such issuing or selling of securities by the Republic.  Rather, the Republic is being sued as a shareholder in YPF.

disclosure obligation that Repsol alleges to have arisen from the Republic's expropriation of YPF shares. *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 482 (2d Cir. 2007) (obligation arising from sovereign's exercise of inherently sovereign power to enter into borrowing relationship with International Monetary Fund does not constitute commercial activity). If a U.S. court took jurisdiction over the direct consequences of a clearly sovereign act, the distinction drawn in the FSIA and its case law between sovereign and commercial activity, *see supra* at 8, would be completely negated.

The First Clause of the commercial activity exception also does not apply because Repsol's claim is not based upon any commercial activity "carried on in the United States." The Expropriation Process occurred in Argentina, not in the United States. Likewise, the Republic's alleged decision not to file 13D Reports would be an act committed in Argentina, not the United States. As the Second Circuit has held:

> The decision by a foreign sovereign not to perform is itself an act, but it is not an act in the United States; it is an act in the foreign state. . . .

*Rogers v. Petroleo Brasileiro, S.A.*, 673 F.3d 131, 138 (2d Cir. 2012) (quoting *Guirlando v. T.C. Ziraat Bankasi A.S.*, 602 F.3d 69, 76 (2d Cir. 2010)). Accordingly, the First Clause of the commercial-activity exception does not apply here.

Second Clause: Act Performed in the United States in Connection With a Commercial Activity of the Foreign State Elsewhere. The Second Clause of the commercial-activity exception, *see supra* at 7, requires that the claim be based upon two different acts or actions by the foreign sovereign: there must be a non-commercial act performed by the foreign sovereign in the United States, *Rogers*, 673 F.3d at 137, *Kensington*, 505 F.3d at 157, which was taken "in connection with" a commercial activity of the sovereign elsewhere.[8]

---

[8] The term "in connection with," as used here, "is a term of art" that the courts interpret "narrowly." *Garb*, 440 F.3d at 587. Where the act that forms the basis of plaintiff's claim "ha[s]

Here, Repsol's claims are not based upon a non-commercial "act performed in the United States" by the Republic.  Indeed, both of the Republic's acts upon which Repsol's claims are based – the Expropriation Process and the alleged decision not to file 13D Reports – occurred in Argentina.  *See supra* at 10.   This clause is therefore inapplicable.  *Kensington*, 505 F.3d at 157 (finding Second Clause inapplicable because plaintiff failed to allege "that any non-commercial acts performed by [defendant] in the United States . . . formed the basis of its complaint").

Moreover, even if Repsol's claims were based on an act performed by the Republic in the United States, there is no commercial activity of the Republic "elsewhere" (*i.e.*, outside the United States)  taken "in connection with" such act, as this Clause requires.  Neither of the two acts described in the Complaint – the Expropriation Process and the alleged decision not file 13D Reports – constitutes commercial activity within the meaning of the FSIA.  *See supra* at 9-10.  Accordingly, the Second Clause of the commercial-activities exception does not apply here.

Third Clause: An Act Outside the Territory of the United States in Connection With a Commercial Activity of the Foreign State Elsewhere That Causes a Direct Effect in the United States.  Under the Third Clause, *see supra* at 7, the claim must satisfy three separate requirements:  it must be "(1) based . . . upon an act outside the territory of the United States; (2) that was taken 'in connection with a commercial activity of [the foreign state]' outside this country; and (3) that 'caused a direct effect in the United States.'"  *Weltover,* 504 U.S. at 611 (bracket omitted); *Virtual Countries, Inc. v. Republic of South Africa*, 300 F.3d 230, 236 (2d Cir. 2002).

---

only an attenuated connection" to the commercial activities cited by plaintiff, the "in connection with" requirement is not satisfied.  *Drexel Burnham Lambert Group Inc. v. Comm. of Receivers for A.W. Galadari*, 12 F.3d 317, 330 (2d Cir. 1993).

This Clause does not apply here.  While Repsol's claim does allege acts by the Republic outside the United States (*i.e.*, the Expropriation Process and the decision not to file 13D Reports), the Complaint fails to allege that either act was taken "in connection with a commercial activity of [the Republic] elsewhere," 28 U.S.C. § 1605(2).  As noted above, *see supra* at 9-10, the Complaint fails to allege any commercial activity by the Republic, let alone any commercial activity that occurred "elsewhere" (i.e., outside the United States).  Nor is the Complaint based upon an act occurring outside the United States that was "in connection with" such commercial activity by the Republic.  *See Garb*, 440 F.3d at 587 (commercial-activity exception's "in connection with" provision is "term of art" that courts interpret "narrowly").

Finally, the Complaint fails to allege that the relevant act "cause[d] a direct effect in the United States."  An effect in the United States is "direct" within the meaning of this provision "if it follows as an immediate consequence" of the defendant's activity.  *Weltover*, 504 U.S. at 618; *Kensington*, 505 F.3d at 157.  The effect in the United States "must be something more than trivial or incidental."  *Kensington*, 505 F.3d at 157.  Here, Repsol has failed to allege any financial loss, either direct or indirect, from the Republic's decision not to file 13D Reports concerning YPF.  *See* Complaint ¶¶ 1-30.  Nor has Repsol alleged a direct effect within the United States.  *See id.*  Repsol is a Spanish company with its headquarters in Spain.  *See Kensington*, 505 F.3d at 158 (direct effect requirement not satisfied because "[plaintiff] is a foreign corporation and thus any alleged injury it suffered occurred outside the United States").

Likewise, Repsol cannot satisfy the direct effect requirement by alleging an effect on the decision-making ability of other YPF shareholders, *see* Complaint ¶ 24.  Putting aside for the moment the abundant public disclosure that YPF has made with the SEC concerning the Company's plans and operations, there is no allegation that other shareholders

of YPF (which is an Argentine company) are located in the United States.  Moreover, the

allegation that shareholders' ability to make investment decisions about YPF has been

impaired is purely speculative.  Such speculative allegations are insufficient to satisfy this

immunity exception.  *See Virtual Countries*, 300 F.3d at 238 (declining to find direct effect

requirement satisfied by "speculative" allegation that complained-of press release affected

investors' assessment of plaintiff's business prospects).  The rule against speculative

allegations applies with even greater force here, given the abundant disclosures made by YPF

concerning its plans and operations.[9]  Accordingly, the Third Clause of the commercial-

activity exception does not apply here.

*          *          *          *

For the foregoing reasons, Repsol cannot shoehorn its claim within the FSIA's

commercial-activity exception.  The Republic is therefore immune from suit.  Because the

Court lacks subject matter jurisdiction, the Complaint should be dismissed pursuant to Fed. R.

Civ. P. 12(b)(1).

**POINT II**

**THERE IS NO PERSONAL
JURISDICTION OVER THE DEFENDANTS**

Under the FSIA, the court has personal jurisdiction over a foreign state

whenever subject matter jurisdiction exists under 28 U.S.C. § 1330(a) and service of process

has been effected in accordance with 28 U.S.C. § 1608.  28 U.S.C. § 1330(b).  Thus, absent an

exception to immunity under the FSIA, the court not only lacks subject matter jurisdiction, but

the court lacks personal jurisdiction as well.  *Verlinden,* 461 U.S. at 485 n.5; *Cargill Int'l S.A.*

---

[9]  *See infra* at 18-19. Under the FSIA, "the *plaintiff* 'has the burden of going forward with
evidence showing that . . . immunity should not be granted.'"  *Virtual Countries,* 300 F.3d at 241
(quoting *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2d Cir. 1993)) (emphasis
in original).  "[B]ald assertions" of harm are not sufficient.  *Virtual Countries*, 300 F.3d at 241.

*v. M/T Pavel Dybenko*, 991 F.2d 1012, 1016 (2d Cir. 1992).  Inasmuch as no exception to

foreign state immunity applies here, *see* Point I, *supra*, the Court lacks personal jurisdiction

over the Republic, and the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

**POINT III**

**THE ACT OF STATE DOCTRINE**
**ALSO REQUIRES DISMISSAL**

Repsol is seeking an injunction to force the Republic of Argentina to file a 13D

Report with the Securities and Exchange Commission.  In that Report, Repsol expects Argentina

to disclose its alleged "plans" for managing the country's domestic oil and gas industry.  *See*

Complaint ¶ 22.  Among other things, Repsol wants to require Argentina to disclose whether it

intends to reorganize YPF, make additional investments in the business, or sell any part of the

hydrocarbon infrastructure operated by YPF.  *Id.*  All of this information relates to a central

sovereign concern: the use and development of national energy resources.  It is not the function

of this Court to order Argentina, or any foreign state, to disclose such information.

Separate and apart from the fact that Argentina's Expropriation Process is a

sovereign act protected by the FSIA, the complaint should be dismissed under the Act of State

doctrine.[10]  "The doctrine *precludes any review whatever* of the acts of the government of one

sovereign State done within its own territory by the courts of another sovereign State."  *First*

*Nat. City Bank v. Banco Nacional de Cuba*, 406 U.S. 759, 763 (1972) (emphasis added); *see also*

*Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 438 (1964) (act of state doctrine "shares

with the immunity doctrine a respect for sovereign states").  "[E]ven if the suit is not based

specifically on a sovereign act, we nevertheless decline to decide the merits of the case if in

---

[10]  "Although the act of state doctrine is an affirmative defense as to which a defendant has
the burden, a court may properly grant a motion to dismiss on the basis of that doctrine when its
applicability is shown on the face of the complaint."  *Konowaloff v. Metro. Museum of Art, New*
*York, N.Y.*, No. 11-4338-CV, 2012 WL 6573898 (2d Cir. Dec. 18, 2012).

doing so we would need to judge the validity of the public acts of a sovereign state performed within its own territory." *Callejo v. Bancomer, S.A.*, 764 F.2d 1101, 1112-13 (5th Cir. 1985).

> As the Supreme Court explained the doctrine:

> Every sovereign state is bound to respect the independence of every other sovereign state, and *the courts of one country will not sit in judgment on the acts of the government of another, done within its own territory*.  Redress of grievances by reason of such acts must be obtained through the means open to be availed of by sovereign powers as between themselves.

*Underhill v. Hernandez,* 168 U.S. 250, 252 (1897) (emphasis added).  More recently, the Supreme Court held that "the courts of one state will not question the validity of public acts (acts *jure imperii*) performed by other sovereigns within their own borders, even when such courts have jurisdiction over a controversy in which one of the litigants has standing to challenge those acts."  *Republic of Austria v. Altmann*, 541 U.S. 677, 700 (2004).  "Unlike a claim of sovereign immunity, which merely raises a jurisdictional defense, the act of state doctrine provides foreign states with a substantive defense on the merits."  *Id.*

The underlying public policy is that "the political branches be preeminent in the realm of foreign relations."  *Braka v. Bancomer, S.N.C.,* 762 F.2d 222, 224 (2d Cir. 1985).  Therefore, the Court must evaluate the separation of power concerns in each case to determine the likely impact on international relations and the risk of embarrassing or interfering with the executive branch.  *Bigio v. Coca-Cola Co.*, 239 F.3d 440, 452 (2d Cir. 2000).  If the relief demanded by the plaintiff would require this Court "to declare invalid the official act of a foreign sovereign," the complaint must be dismissed.  *W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp., Int'l,* 493 U.S. 400, 405 (1990).

Here, Repsol seeks an order directing Argentina to disclose information about its national oil and gas industry, and thereby to "declare invalid," *W.S. Kirkpatrick,* Argentina's sovereign decision not to file a 13D Report.  Repsol wants Argentina to disclose what it plans to

do with its national oil and gas industry, including such sensitive decisions as investments and asset sales.  As in *Sabbatino*, 376 U.S. at 400-01, these plans arise directly from a core sovereign act – the proposed expropriation of the Class D shares of YPF in Argentina – and any suit challenging the Republic's decision not to file a 13D Report is barred by the Act of State doctrine.  It is not the function of this Court to order Argentina to disclose its national economic policies under Section 13(d).

The complexity of this case is highlighted by the fact that Repsol is a Spanish entity.  Its dispute with Argentina is the subject of an arbitration claim (filed by Repsol) with the International Centre for Settlement of Investment Disputes, an agency funded under the auspices of the World Bank.  The arbitration, docketed as ICSID Case No. ARB/12/38, concerns alleged violations of a bilateral treaty between Spain and Argentina.  In short, Repsol's claims relating to the YPF expropriation have been submitted to an international tribunal where Argentina will exercise its appropriate defenses.

Because the Republic made its decision in Argentina not to file a 13D Report, the Act of State Doctrine clearly governs this action.   As the Second Circuit held in *Braka*, actions relating to "the effect of foreign financial decrees on the investments of United States entities" are barred.  762 F.2d at 223-24.  There, the Mexican government issued new exchange controls affecting the value of plaintiff's securities.  Because Mexico "acted within its governmental function of setting monetary policy, . . . the court rejected plaintiffs' claims as barred by the act of state doctrine."  *Id.*  The same result is required here.

## POINT IV

### THE INJUNCTION SOUGHT BY REPSOL
### DOES NOT SATISFY THE TRADITIONAL
### REQUIREMENTS FOR INJUNCTIVE RELIEF,
### LET ALONE THE REQUIREMENTS OF THE FSIA

Repsol seeks a mandatory injunction requiring the Republic to submit to an American regulator (the SEC) the 13D Reports that Repsol claims are required by statute. Such extraordinary relief requires more than merely showing that 13D Reports were not filed, however.  Repsol must also establish the traditional requisites for injunctive relief, namely – (i) irreparable harm, and (ii) lack of an adequate remedy at law.  *Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 60-61 (1975).  The Complaint fails on both requirements.[11]

With regard to irreparable harm, "an injunction will issue for a violation of § 13(d) only on a showing of irreparable harm to the interests which that section seeks to protect."  *ICN Pharmaceuticals, Inc. v. Khan,* 2 F.3d 484, 489 (2d Cir. 1993) (quoting *Treadway Cos., Inc. v. Care Corp.*, 638 F.2d 357, 380 (2d Cir. 1980)); *accord Rondeau*, 422 U.S. at 58-60.  Repsol cannot establish an irreparable harm to those interests.  Congress enacted Section 13(d) in 1968, as part of the Williams Act, in response to the wave of hostile corporate takeovers in the 1960's.  *Morales v. Quintel Entertainment, Inc*., 249 F.3d 115, 122 (2d Cir. 2001).  The purpose of Section 13(d) "'is to alert the marketplace to every large, rapid aggregation or accumulation of securities . . .  which might represent a *potential shift* in corporate control.'"  *Id.*, quoting *GAF Corp. v. Milstein*, 453 F.2d 709, 717 (2d Cir. 1971) (emphasis supplied); *accord Rondeau,* 422 U.S. at 58.  "By requiring the disclosure of information by a *potential takeover bidder*," the statute seeks to provide that "shareholders . . .

---

[11] Under the FSIA, a court may issue an injunction against a foreign sovereign only if it is "clearly appropriate" under the circumstances.  H.R. 94-1487, 1976 U.S.C.A.A.N. at 6621.

can evaluate the bidders' intentions in deciding whether to throw in their lot with them." *Morales*, 249 F.3d at 123 (emphasis supplied).

Here, Repsol has alleged no such "potential takeover bidder," *Morales*, 249 F.3d at 123, or "potential shift in corporate control," *GAF Corp.*, 453 F.2d at 717. Indeed, Repsol's own Complaint alleges that the change in corporate control has already occurred. *See supra* at 4-5; Complaint ¶¶ 18-20. The statutory purpose of affording shareholders with sufficient information to evaluate a potential change in corporate control therefore does not apply here. Accordingly, Repsol cannot establish irreparable harm to the interests that Section 13(d) seeks to protect, *ICN Pharmaceuticals*, 2 F.3d at 489, *Treadway Cos.,* 638 F.2d at 380, and its injunction claim should be dismissed on that basis alone.

Repsol's claim for injunctive relief is fatally flawed for yet another reason: it ignores the abundant public disclosure concerning the Expropriation Process and YPF's business operations. The policy objectives underlying the Expropriation Process were set forth in the Hydrocarbons Sovereignty Law itself, which YPF published in a 6-K promptly after the Law's enactment. *See supra* at 5 n.5. Since then, YPF has filed many 6-Ks that are publicly available on the EDGAR website (and are listed on an attachment to the accompanying Scarvalone Declaration) These public statements provide abundant information about changes to management and governance of YPF (including new appointments to the board of directors), and the Company's current and future business operations, including disclosure of the Company's 2013-2017 strategic business plan, and other information that shareholders often disclose in 13D Reports.[12]

---

[12]   For example, while the 13D Reports appears to require disclosure of any plans for disposition of shares, it has already been publicly disclosed – via the 6-K enclosing the text of the Hydrocarbons Sovereignty Law, *see supra* at 5 n.5 – that the shares subject to the expropriation shall be non-transferable by the Republic (except to certain Argentine provinces that, in turn, will be unable to transfer those shares). *See* Hydrocarbons Sovereignty Law, Title

The voluminous disclosures concerning YPF and the Hydrocarbons Sovereignty Law have amply satisfied any interest in disclosure about the Expropriation Process.[13]  *See ICN Pharmaceuticals*, 2 F.3d at 489 (Section 13(d)'s interests "are fully satisfied when the shareholders receive the information required to be filed") (quoting *Treadway*, 638 F.2d at 380)).  Repsol therefore cannot establish irreparable harm.  *Treadway*, 638 F.2d at 380 ("Since the informative purpose of § 13(d) had thereby been fulfilled, there was no risk of irreparable injury and no basis for injunctive relief").

Finally, Repsol cannot establish the other requisite of an injunction claim:  the lack of an adequate remedy at law.  Repsol can pursue compensation for the value of the YPF shares subject to expropriation pursuant to compensation proceedings in Argentina.  *See supra* at 5 (citing Hydrocarbons Sovereignty Law, Title III).

Accordingly, Repsol cannot meet the rigorous requirements necessary to issue a mandatory injunction to the Republic.  The Complaint therefore fails to state a claim upon which relief may be granted and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

---

III, Ch. I, art. 10.  Therefore, given that no change in ownership (except as has been disclosed) shall occur in the future, there is no utility in filing future 13D Reports on this issue.

[13]    Moreover, the actions of YPF (which is Argentina's biggest oil and gas company), and the conduct of the Republic in regard to YPF's operations and governance, have received and will continue to receive considerable scrutiny and attention from the global media.

POINT V

## THE COMPLAINT SHOULD BE
## DISMISSED BECAUSE OF IMPROPER VENUE

Repsol asserts that venue is proper in the Southern District of New York under the general venue statute, 28 U.S.C. § 1391, and under Section 27 of the Exchange Act, 15 U.S.C. § 78aa.   Neither statute provides any basis for venue in this District.   Because venue is improper, the Court should dismiss the action pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1406(a).

### A.  Venue is Improper Under the FSIA

In suits against foreign states, venue is governed by 28 U.S.C. § 1391(f), the venue provision of the FSIA.   The statute provides that:

> Venue in an action against a foreign sovereign is proper: (1) in any judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; (2) in any judicial district in which the vessel or cargo of a foreign state is situated; (3) in any judicial district in which the agency or instrumentality is licensed to do business or is doing business, if the action is brought against an agency or instrumentality of a foreign state; or (4) in the United States District Court for the District of Columbia if the action is brought against a foreign state or political subdivision thereof.

28 U.S.C. § 1391(f).  Here, subsections (2) and (3) are plainly inapplicable.  The second clause of subsection (1) is also inapplicable, because the phrase "property that is the subject of the action" relates only to property disputes or *in rem* actions concerning ownership of specific assets.  *Commissions Imp. Exp. S.A. v. Republic of the Congo*, 2012 WL 1468486 (S.D.N.Y. Apr. 27, 2012); *Falcoal, Inc. v. Turkiye Komur Isletmeleri Kurumu*, 660 F. Supp. 1536, 1543 (S.D. Tex. 1987).

Therefore, if Repsol is to justify its choice of venue in the Southern District of New York, it must show that "a substantial part of the events or omissions giving rise to the claim occurred" in this District.  This requirement must be construed strictly.  *Gulf Ins. Co. v.*

*Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005).  "The requirement of venue is specific and unambiguous; it is not one of those vague principles which, in the interest of some overriding policy, is to be given a 'liberal' construction."  *Olberding v. Illinois Cent. R.R.,* 346 U.S. 338, 340  (1953).

The Second Circuit – construing the identical language of § 1391(b)(2) – has directed the district courts "to take seriously the adjective 'substantial.'"  *Gulf Ins. Co.*, 417 F.3d at 357.  "That means for venue to be proper, *significant* events or omissions *material* to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere."  *Id. (citing Cottman Transmission Sys. v. Martino,* 36 F.3d 291, 294 (3d Cir. 1994) (emphasis in original).[14]

Applying this test here, it is plain that venue is improper.  There is only one alleged "omission" underlying Repsol's claim:  Argentina's decision not to file a Section 13(d) disclosure in connection with the Expropriation Process.  Complaint, ¶ 23.  As explained above, that decision occurred in Argentina, not in the United States.  *See supra* at 10 (citing *Rogers*, 673 F.3d at 138; *Guirlando*, 602 F.3d at 76).   The other events described in the Complaint – such as the Expropriation Process, the change in control of YPF and the subsequent shareholder meetings – also took place in Argentina.  Complaint, ¶¶ 18-20.  Thus, there are no "substantial events or omissions" material to Repsol's claim that occurred in this District.  Venue is therefore improper under § 1391(f)(1).  *See Cont'l Cas. Co. v. Argentine Republic*, 2012 WL 3985412 (E.D. Va. Sept. 11, 2012) (arbitration award entered overseas does not provide basis for venue under § 1391(f)(1)).

---

[14]   The same analysis applies to both subsections, because they use the same language.  *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.*, 241 F.3d 135, 153 (2d Cir. 2001); *Concesionaria DHM, S.A. v. Int'l Fin. Corp.*, 307 F. Supp. 2d 553, 558 (S.D.N.Y. 2004).

Under these circumstances, the only part of section 1391(f) that provides venue here is (f)(4), which provides that the District of Columbia is the "default venue" for suits against foreign sovereigns.  *Oceanic Exploration Co. v. Conocophillips, Inc.*, 2007 WL 420186 (D.D.C. Feb. 5, 2007).  There is no basis for venue in New York under section 1391(f).

**B.  The Securities Laws Do Not Provide Venue in this District**

Repsol suggests that venue lies here under Section 27 of the Exchange Act.  *See* Complaint, ¶ 13.  This venue provision is inapplicable to an action against a foreign sovereign because the FSIA provides the exclusive basis for venue in this action.   As the Supreme Court has explained, Congress, in enacting the FSIA, intended "to enact a comprehensive statutory scheme . . . . by the inclusion in the FSIA of provisions for venue, removal, attachment and execution" *Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 435 n. 3 (1989) (citing 28 U.S.C. § 1391(f)).

Indeed, every court to consider a venue issue involving a foreign sovereign or instrumentality has applied section 1391(f).  "Even when a case involves a foreign state's private activities, . . . the FSIA provides the state with particularized procedural treatment in some circumstances, for example, regarding venue, 28 U.S.C. § 1391(f)." *USX Corp. v. Adriatic Ins. Co.*, 345 F.3d 190, 207 (3d Cir. 2003); *see also Tannenbaum v. Rabin*, 1996 WL 75283 (E.D.N.Y. Feb. 13, 1996) (finding venue improper where facts pleaded do not fall within any sub-paragraph of § 1391(f)); *U.S. Aviation Underwriters, Inc. v. Dassault Aviation*, 2005 WL 2403724 (E.D. Ark. Sept. 28, 2005) (section 1391(f) controls venue upon finding that defendant is an organ of foreign state).

In sum, "a foreign state may be sued <u>only</u> in that jurisdiction in which a substantial part of the events or omissions giving rise to the claim occurred, or in the United States District Court for the District of Columbia" pursuant to the venue provision of the FSIA.

*Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*, 1987 WL 15129 (S.D.N.Y. July 29, 1987) (emphasis supplied).  Under that legal standard, New York is not the proper venue.

## C.  The Complaint Should Be Dismissed for Lack of Venue

Because venue is improper in this district, the action should be dismissed.  *See* Fed. R. Civ. P. 12(b)(3); 28 U.S.C. § 1406(a).  The only exception to the rule of dismissal allows the Court to transfer the action "in the interest of justice" to any district in which it could have been brought.  28 U.S.C. § 1406(a).  That exception does not apply here.

The "interest of justice" counsels in favor of transfer when the plaintiff shows that it would be prejudiced by a dismissal, most commonly as a result of the lapse of a relevant limitations period that would preclude re-filing in the district where venue is proper.  *See, e.g., Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-467 (1962) (allowing transfer due to injustice relating to the expiry of the limitations period).  When deciding whether to transfer rather than dismiss, courts have also focused on whether the plaintiff had a good faith and reasonable belief that venue was proper.  *See, e.g., Cannon v. Newmar Corp.*, 210 F. Supp.2d 46 1,464 (S.D.N.Y. 2002) (transferring action where plaintiff had good faith belief that defendant owned a business in this District).

Here, in light of the total lack of a connection to this District, Repsol's choice of venue cannot have been based on a reasonable belief that venue was proper.  On the contrary, Repsol's attorneys "reasonably could have foreseen that the forum in which the suit was filed was improper."  14D C. Wright and A.  Miller, Fed. Prac. & Proc. Juris. § 3827 (3d ed.) (2007); *see also Spar. Inc. v. Info. Resources, Inc.*, 956 F.2d 392, 394 (2d Cir. 1992) (dismissing case because transfer "would reward plaintiffs for their lack of diligence in choosing a proper forum and thus would not be in the interest of justice").  Finally, no limitations issues have arisen since the Complaint was filed here on May 21, 2012 that would

preclude this action from being re-filed promptly in the District of Columbia. *See, e.g., Buchheit v. United Air Lines. Inc*., 202 F. Supp. 811, 816 (S.D.N.Y. 1962) (dismissing action when there was no bar to reinstituting the action in the proper district).  As a result, no "interest of justice" weighs in favor of transfer, and dismissal of the Complaint is required. *See Nizami v. Woods*, 263 F. Supp. 124, 135 (S.D.N.Y. 1967) (dismissing action where there were no factors present weighing in favor of transfer).

   In the alternative -- should the Court decide not to dismiss the complaint despite the lack of subject matter jurisdiction and personal jurisdiction and the other grounds for dismissal -- this action should be transferred to the only district where it could have been brought in the first place: the U.S. District Court for the District of Columbia.  28 U.S.C. § 1391(f)(4).  *See Commissions Import*, 2012 WL 1468486 (transferring venue to D.D.C. in an action seeking recognition of an English judgment); *Wye Oak Tech., Inc. v. Republic of Iraq,* 1:09CV793 (AJT/JFA), 2010 WL 2613323 (E.D. Va. June 29, 2010) (transferring venue to D.D.C. where plaintiffs failed to establish that a substantial part of the events giving rise to the claim occurred in the Eastern District of Virginia).

## <u>CONCLUSION</u>

For all of the foregoing reasons, the Complaint should be dismissed in its entirety.

Dated:  New York, New York
        January 22, 2013

Respectfully submitted,

DOAR RIECK KALEY & MACK

By:      /s/ Edward Scarvalone

EDWARD SCARVALONE
217 Broadway, 7th Floor
New York, New York 10007
Tel.:  (212) 619-3730
Fax:  (212) 962-5037
Email: escarvalone@doarlaw.com

JONATHAN A. WILLENS LLC

By:      /s/ Jonathan A. Willens

JONATHAN A. WILLENS
217 Broadway, 7th Floor
New York, New York 10007
Tel.:  (212) 637-3749
Email: jawillens@briefworks.com

*Attorneys for Defendant*
*The Republic of Argentina*