UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| REPSOL YPF, S.A., | : | |
| Plaintiff, | : | 12 Civ. 4018 (TPG) |
| - against - | : | |
| THE REPUBLIC OF ARGENTINA, | : | |
| Defendant. | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
<u>DEFENDANT'S MOTION TO DISMISS THE COMPLAINT</u>**

Edward Scarvalone
DOAR RIECK KALEY & MACK
217 Broadway, 7th Floor
New York, NY 10007
Tel. (212) 619-3730

Jonathan A. Willens
JONATHAN A. WILLENS LLC
217 Broadway, 7th Floor
New York, NY 10007
Tel. (212) 619-3749

*Attorneys for Defendant
The Republic of Argentina*

## TABLE OF CONTENTS

ARGUMENT ..............................................................................................................................1

POINT I:     THE REPUBLIC IS IMMUNE FROM SUIT HERE .................................................1

POINT II:    THE ACT OF STATE DOCTRINE REQUIRES DISMISSAL ................................5

POINT III:   REPSOL CANNOT ESTABLISH IRREPARABLE HARM ...................................7

POINT IV:    VENUE IS IMPROPER .........................................................................................9

CONCLUSION..........................................................................................................................10

## TABLE OF AUTHORITIES

**CASES:**

*Braka v. Bancomer, S.N.C.*,
    762 F.2d 222 (2d Cir. 1985) ................................................................................. 2, 6

*Braka v. Multibanco Comermex, S.A.*,
    589 F. Supp. 802 (S.D.N.Y. 1984) ............................................................................. 2

*Callejo v. Bancomer, S.A.*,
    764 F.2d 1101 (5th Cir. 1985). .................................................................................. 2

*Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund, Ltd.*,
    598 F.3d 30 (2d Cir. 2010) ........................................................................................ 8

*Drexel Burnham Lambert Group Inc. v. Comm. of Receivers for A.W. Galadari*,
    473 F.3d 463 (2d Cir. 2007) ...................................................................................... 4

*EM Ltd. v. Republic of Argentina*,
    473 F.3d 463 (2d Cir. 2007) ...................................................................................... 3

*E.ON AG v. Acciona, S.A.*,
    468 F.Supp. 2d 537 (S.D.N.Y. 2006) ........................................................................ 7

*First Nat. City Bank v. Banco Nacional de Cuba*,
    406 U.S. 759 (1972) .................................................................................................. 5

*GAF Corp. v. Milstein*,
    453 F.2d 709 (2d Cir. 1971) ................................................................................... 7, 8

*Garb v. Republic of Poland*,
    440 F.3d 579 (2d Cir. 2006) ...................................................................................... 4

*Gibbons v. Udaras na Gaeltachta*,
    549 F.Supp. 1094 (S.D.N.Y. 1982) ........................................................................... 3

*Guirlando v. T.C. Ziraat Bankasi A.S.*,
    602 F.3d 69 (2d Cir. 2010) .................................................................................... 3, 6

*Gulf Ins. Co. v. Glasbrenner*,
    417 F.3d 353 (2d Cir. 2005) ................................................................................ 9, 10

*ICN Pharmaceuticals, Inc. v. Khan*,
    2 F.3d 484 (2d Cir. 1993) .......................................................................................... 7

*Kensington Int'l Ltd. v. Itoua*,
    505 F.3d 147 (2d Cir. 2007) ............................................................................................ 2

*Konowaloff v. Metro. Museum of Art*,
    702 F.3d 140 (2d Cir. 2012) ............................................................................................ 6

*Lightwater Corp.. v. Republic of Argentina*,
    02 Civ. 3804 (TPG), 2003 WL 1878420 (S.D.N.Y. Apr. 14, 2003) ................................. 6

*Ministry of Supply, Cairo v. Universe Tankships, Inc.*,
    708 F.2d 80 (2d Cir. 1983) .............................................................................................. 2

*Morales v. Quintel Entertainment, Inc.*,
    249 F.3d 115 (2d Cir. 2001) ........................................................................................ 7, 8

*NYSA-ILA Pension Trust Fund v. Garuda Indonesia*,
    7 F.3d 35 (2d Cir. 1993) .................................................................................................. 2

*Republic of Austria v. Altmann*,
    541 U.S. 677 (2004) ........................................................................................................ 5

*Rogers v. Petroleo Brasileiro, S.A.*,
    673 F.3d 131 (2d Cir. 2012) ........................................................................................ 3, 4

*Rong v. Liaoning Province Gov't*,
    452 F.3d 883 (D.C. Cir. 2006) ........................................................................................ 4

*Saudi Arabia v. Nelson*,
    507 U.S. 349 (1993) .................................................................................................... 2, 5

*United States v. Giffen*,
    326 F.Supp. 2d 497 (S.D.N.Y. 2004) .............................................................................. 7

*Virtual Countries, Inc. v. Republic of South Africa*,
    300 F.3d 230 (2d Cir. 2002) ............................................................................................ 5

*W.S. Kirkpatrick & Co. v. Envtl. Tectonics Corp.*,
    493 U.S. 400 (1990) ........................................................................................................ 7

**STATUTES:**

15 U.S.C. § 78c(a)(9) ................................................................................................................... 5

15 U.S.C. § 78m(d) ............................................................................................................. *passim*

28 U.S.C. § 1391(f) ........................................................................................................... 3, 4, 10

28 U.S.C. §§ 1602-1611 (Foreign Soverign Immunities Act) ............................................. *passim*

28 U.S.C. § 1605(a)(2) ........................................................................................................ 1, 4, 5

**LEGISLATIVE HISTORY:**

House Report No. 94-1487, 1976 U.S.C.C.A.N. (1976) ................................................................ 7

The Republic respectfully submits this memorandum in further support of its motion to dismiss the Complaint, and in reply to Repsol's opposition brief, dkt. 15 ("Opp.").[1]

## ARGUMENT

## POINT I

## THE REPUBLIC IS IMMUNE FROM SUIT HERE

Repsol concedes that the Republic is immune from suit unless Repsol can meet its burden of demonstrating that its claim against the Republic, for allegedly not making disclosure required by Section 13(d), satisfies the FSIA's commercial-activity exception, 28 U.S.C. § 1605(a)(2).  Brf. 6-7; *see* Opp. 3-4.  Repsol has failed to meet that jurisdictional burden.  Neither of the two clauses of the commercial-activity exception upon which Repsol relies, *see* Opp. 4, applies here.

With regard to the first clause, the alleged nondisclosure is not "commercial activity" (let alone commercial activity in the United States), but rather an alleged failure to comply with a regulatory obligation – one that arose solely by exercise of the Republic's sovereign decision to initiate an Expropriation Process over YPF's shares.  Brf. 8-10.  Repsol implicitly concedes the weakness of its jurisdictional claim by arguing that the Complaint is based on a "course of conduct," Opp. 5, and not solely upon the alleged nondisclosure under Section 13(d), *id*.  Repsol's attempt to recast its Complaint is unavailing.  The "course of conduct" that Repsol cites consists of the Republic's actions in "taking YPF public, obtaining investors, making corporate decisions, and making partial disclosures."  Opp. 4; *see also id*. at 5, 6 (Republic's "raising capital" and decision to privatize YPF "in the early 1990s").  But

---

[1] The Republic incorporates the defined terms used in its moving brief of January 22, 2013, dkt.12 ("Brf.").  As noted therein, the Complaint's factual allegations are assumed to be true on a motion to dismiss, and thus for purposes of this motion the Republic is neither disputing nor conceding any allegation.  Brf. 4 n.3.  Repsol's claim that the Republic "concedes" Complaint allegations, *see* Opp. 1, is therefore incorrect.

plainly, the Complaint is not "based upon" any of these alleged actions, some of which occurred more than twenty years ago, *see* Cplt. ¶ 15; rather, the Complaint is based upon the Republic's alleged failure to make 13(d) disclosure, *see* Brf. 7-8, Cplt. ¶¶ 26, 28-30, as the Complaint's own jurisdictional allegation makes clear.  *See* Cplt. ¶ 12 ("the claim . . . arises out of Argentina's failure to fulfill its obligation . . . to file a disclosure statement with the SEC"). Because this alleged nondisclosure is "the gravamen" of the Complaint, *Kensington Int'l Ltd. v. Itoua*, 505 F.3d 147, 156 (2d Cir. 2007), Repsol must establish that the nondisclosure constitutes "commercial activity" under the FSIA – which Repsol cannot show.  *See* Brf. 7-8; *Saudi Arabia v. Nelson*, 507 U.S. 349, 357-58 (1993) (commercial activities cited by plaintiff may have "led to the conduct that eventually injured [plaintiff]," but "they are not the basis for [plaintiff's] suit"); *NYSA-ILA Pension Trust Fund v. Garuda Indonesia*, 7 F.3d 35, 38 (2d Cir. 1993) (requiring "significant nexus" between "the commercial activity in this country upon which the exception is based and a plaintiff's cause of action").[2]

        Not surprisingly, Repsol fails to cite a single case holding that a foreign sovereign, in its capacity as corporate shareholder, engages in "commercial activity" by not making a disclosure under U.S. securities laws.  Instead, Repsol relies in vain on cases based upon the sale of securities by foreign sovereigns (or sovereign entities), *see* Opp. 7-8 (citing *Braka v. Multibanco Comermex, S.A.*, 589 F. Supp. 802, 803 (S.D.N.Y. 1984), and *Callejo v. Bancomer, S.A.*, 764 F.2d 1101, 1108 (5th Cir. 1985).  Repsol's claim is not based upon the sale of securities, however, but rather upon a disclosure obligation allegedly arising from the Republic's Expropriation Process over YPF's shares, *see* Cplt. ¶¶ 4, 12, 28-30.

---

[2] Repsol's reliance upon an older Second Circuit case, *Ministry of Supply, Cairo v. Universe Tankships, Inc.*, 708 F.2d 80 (2d Cir. 1983), for the notion that the commercial-activity exception is satisfied "if the broader 'course of conduct' is in the United States, even if the particular 'transaction or act' at issue is not," Opp. 5, is misplaced.  *Nelson* (decided in 1993) and its progeny hold otherwise.

In this regard, Repsol does not dispute that the Republic's Expropriation Process over YPF's shares is a sovereign, rather than a commercial, act.  *See* Opp. 8; Brf. 9-10.  The disclosure obligation that Repsol alleges to have arisen from the Expropriation Process is thus outside the scope of the commercial-activity exception.  Brf. 9-10 (citing *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 482 (2d Cir. 2007)).  Just as the Second Circuit in *EM Limited* found a sovereign's repayment obligation under a borrowing relationship with the International Monetary Fund to be immune under the FSIA (because only a sovereign may borrow from the IMF), *see* 473 F.3d at 482, so, too, is the alleged disclosure obligation arising from expropriation of corporate shares (because only a sovereign may expropriate property). Brf. 9-10.  Repsol's attempt to distinguish *EM Limited, see* Opp. 9, is thus beside the point.

Nor has Repsol established that the Republic's alleged nondisclosure occurred "in the United States," as the first clause of the commercial-activity exception requires, *see* Brf. 10.  "'The decision by a foreign sovereign not to perform is itself an act, but it is not an act in the United States; it is an act in the foreign state. . . .'"  *Rogers v. Petroleo Brasileiro, S.A.*, 673 F.3d 131, 138 (2d Cir. 2012) (quoting *Guirlando v. T.C. Ziraat Bankasi A.S.*, 602 F.3d 69, 76 (2d Cir. 2010)).  Repsol's reliance upon a district court opinion (involving breach of contract) that predates *Rogers* and *Guirlando* by some twenty years, *see* Opp. 10 (citing *Gibbons v. Udaras na Gaeltachta*, 549 F. Supp. 1094 (S.D.N.Y. 1982)), is unavailing, as is Repsol's attempt to distinguish *Rogers* and *Guirlando*.[3]

---

[3]  Repsol's contention that *Rogers* can be ignored because it involved the "direct effect" test of the commercial-activity's third clause, Opp. 10 n.10, is wrong.  The operative passage from *Rogers*, in fact, concerns the exception's *second* clause (requiring that the relevant "act" be performed in the United States, *see* Brf. 7, 10), in regard to which the Second Circuit ruled that a foreign sovereign's decision not to perform is an "act" that occurs in the foreign state.  673 F.3d at 137-38.  Repsol offers no reason why this ruling, or the Second Circuit's prior ruling in *Guirlando* (involving the exception's third clause), should not be applied here.  *See* Opp. 10 n.10.  The notion that the exception's first clause "looks at a broader 'course of commercial conduct,'" *id.*, is without merit.  *See supra* at 1-2.

Similarly without merit is Repsol's invocation of the FSIA's venue provision, 28 U.S.C. § 1391(f).  Repsol's labeling of the Republic's decision not to perform an act as an "omission" within the meaning of

Repsol's reliance upon the third clause of the commercial-activity exception, *see* Opp. 11-14, is also misplaced. The Complaint fails to allege that the Republic's decision not to file Section 13(d) reports was taken "in connection with a commercial activity" of the Republic outside the United States, as the statute requires. *See* Brf. 12. Repsol argues in this regard that the decision not to file Section 13(d) reports was taken in connection with a broader "course of conduct" by the Republic, *see* Opp. 11, including taking YPF public (which occurred in the 1990's), the subsequent issuance of YPF stock, the recent acquisition of Repsol shares via the Expropriation Process, and making corporate decisions relating to YPF, *id*., but this argument is pointless. The notion that the Republic's decision not to make 13(d) disclosure in 2012 was "in connection with" actions taken by the Republic *twenty years ago* in taking YPF public and issuing stock, *id*., defies common sense and ignores the Second Circuit's instruction that the "in connection with" requirement should be interpreted "narrowly," *see* Brf. 12, *Garb v. Republic of Poland*, 440 F.3d 579, 587 (2d Cir. 2006). A complained-of act that has "only an attenuated connection" to commercial activity by the sovereign, *Drexel Burnham Lambert Grp. Inc. v. Comm. Of Receivers for A.W. Galadari*, 12 F.3d 317, 330 (2d Cir. 1993), fails to satisfy the statute, *id*.

Moreover, reliance upon the Republic's acquisition of YPF shares through the Expropriation Process and the Republic's subsequent decisions concerning YPF, *see* Opp. 11, is futile. Because such actions are inherently sovereign (not commercial) in nature, *see* Brf. 8-10, *Garb*, 440 F.3d at 586-87, *Rong v. Liaoning Province Gov't*, 452 F.3d 883, 889-90 (D.C. Cir. 2006), they cannot serve as the "commercial activity" required by this exception.

---

the venue provision, and contending that the Republic's jurisdictional argument would render § 1391(f) "superfluous," *see* Opp. 10 n.10, is foreclosed by *Rogers*, which implicitly found otherwise in holding that a sovereign's decision not to perform an act occurs in the foreign state – not in the United States.

In addition, Repsol has failed to demonstrate that the nondisclosure "cause[d] a direct effect in the United States," as this clause of the exception requires, *see* Brf. 12. Repsol does not dispute that the Complaint fails to allege any financial loss, either direct or indirect, from the nondisclosure, *see id.*, and analogous attempts to rely on a purported injury to shareholders' decision-making ability have been rejected as "speculative." *Id*. at 13 (citing *Virtual Countries*, *Inc. v. Republic of South Africa*, 300 F.3d 230, 238 (2d Cir. 2002)). Any such injury claim here is further undermined by the abundant disclosure concerning YPF's current and future business operations, *see* Brf. 18 and Scarvalone Declaration Exhs. A, B.[4]

Simply put, Repsol has failed to establish that the nondisclosure under Section 13(d) is "commercial activity carried on in the United States," § 1605(a)(2), or an act "in connection with a commercial activity" of the Republic, *id.*, and fails to cite a single case in which such nondisclosure was found to satisfy the commercial-activity exception.

## POINT II

## THE ACT OF STATE DOCTRINE REQUIRES DISMISSAL

The Act of State doctrine "*precludes any review whatever* of the acts of the government of one sovereign State done within its own territory by the courts of another sovereign State." *First Nat. City Bank v. Banco Nacional de Cuba*, 406 U.S. 759, 763 (1972) (emphasis added). Even when a court has jurisdiction, it "will not question the validity of public acts . . . performed by other sovereigns within their own borders." *Republic of Austria v. Altmann*, 541 U.S. 677, 700 (2004). The doctrine requires dismissal of Repsol's Complaint.

---

[4] Repsol's argument that Section 13(d) somehow overrides the FSIA and confers subject matter jurisdiction, *see* Opp. Brf. 13, is futile in light of *Nelson*, 507 U.S. at 356 (FSIA "provides the sole basis" for obtaining jurisdiction over a foreign state). In any event, that the Exchange Act defines "person" to include a "government" or governmental entity, *see* 15 U.S.C. § 78c(a)(9), hardly means that Congress intended Section 13(d) to include *foreign* sovereigns within its reach, let alone create a private right of action against foreign sovereigns. The fact that other sovereigns made 13(d) disclosure in connection with certain stock acquisitions, *see* Opp. 14, does not mean that such disclosure was required, let alone that disclosure is required where the sovereign acquires shares by expropriation.

Repsol tries to avoid this obvious conclusion by ignoring binding precedents of the Second Circuit on two critical issues. First, the Court of Appeals decided only two months ago that a district court "may properly grant a motion to dismiss on the basis of that doctrine when its applicability is shown on the face of the complaint." *Konowaloff v. Metro. Museum of Art*, 702 F.3d 140, 146 (2d Cir. 2012). Although the Republic cited this decision in its moving brief, Brf. 14 n. 10, Repsol fails to mention it at all. This is understandable, because Repsol's argument that "it is premature to consider the Act of State doctrine on a motion to dismiss, because it is an affirmative defense as to which Defendant bears the burden of persuasion," Opp. 15, is directly contrary to *Konowaloff*. Dismissal should be granted on Act of State grounds because "its applicability is shown on the face of the [C]omplaint." 702 F.3d at 146.

Second, as explained above, the Court of Appeals' decisions in *Rogers* and *Guirlando* leave no doubt that the Republic's decision not to disclose whatever plans it may have for managing the country's hydrocarbon resources – the only decision challenged by Repsol in this case – "is not an act in the United States; it is an act in the foreign state." *See supra* at 3. Repsol mistakenly relies, Opp. 15, on this Court's decision in *Lightwater Corp. v. Republic of Argentina*, 02 Civ. 3804 (TPG), 2003 WL 1878420 (S.D.N.Y. Apr. 14, 2003), which focused on the special case of a foreign government's failure to pay bondholders who are located in the United States. As the Second Circuit explained in *Guirlando*, however, in the absence of a contract requiring performance in the United States, a foreign government's decision not to act occurs in the foreign country. 602 F.3d at 76-77; *Braka*, 762 F.2d at 223-24 (Act of State doctrine bars actions relating to "the effect of foreign financial decrees on the investments of United States entities.")

Repsol says that the Act of State doctrine is inapplicable here because the Republic's decision not to disclose its hydrocarbon policies to the SEC is not an "official act" or

a "sovereign act." *See* Opp. 15.  This makes no sense.  A decision to announce or withhold information about national economic and security policies is a core sovereign act, unlike the bribery and kickbacks at issue in the cases cited by Repsol.[5]

By alleging that the Republic violated Section 13(d), and asking the Court to issue an order "declaring that [the Republic] is in violation" of the law, Cplt. ¶ 7, the Complaint, on its face, demands that the Court declare an official act of the Republic to be invalid.  Because this relief is barred by the Act of State doctrine, the Complaint must be dismissed.

## POINT III

## REPSOL CANNOT ESTABLISH IRREPARABLE HARM

Repsol cannot demonstrate that it will be irreparably harmed absent a mandatory injunction requiring the Republic to make 13(d) disclosure, let alone show that the injunction it seeks is "clearly appropriate" under the FSIA – which Repsol does not dispute is a required showing whenever injunctive relief is sought against a foreign sovereign.  Brf. 17 n.11 (citing H.R. 94-1487, 1976 U.S.C.A.A.N. at 6621).[6]

In this regard, Repsol does not seriously dispute that "an injunction will issue for a violation of § 13(d) only on a showing of irreparable harm to the interests which that section seeks to protect," Brf. 17 (quoting *ICN Pharmaceuticals, Inc. v. Khan,* 2 F.3d 484, 489 (2d Cir. 1993)), and that the purpose of Section 13(d) is to alert the market place to facts that might represent "a potential shift in corporate control,'" Brf. 17 (quoting *Morales v. Quintel*

---

[5] *United States v. Giffen*, 326 F. Supp. 2d 497, 503 (S.D.N.Y. 2004) (kickbacks to Kazakh officials are not immune under the act or state doctrine); *W.S. Kirkpatrick & Co., Inc. v. Envtl. Tectonics Corp.,* 493 U.S. 400, 406 (1990) (bribery of Nigerian officials not a sovereign act).

[6] Repsol's contention that irreparable harm is not required when 13(d) disclosure is sought, *see* Opp. 16-17, is flatly contradicted by the case law, *see* Brf. 17, *infra* at 7-8, and is undermined by the very case upon which Repsol primarily relies, *E.ON AG v. Acciona, S.A*., 468 F. Supp. 2d 537, 555 (S.D.N.Y. 2006) (requiring plaintiff to demonstrate traditional requirements for injunctive relief in lawsuit seeking, *inter alia*, corrective 13(d) disclosures).

*Entertainment, Inc*., 249 F.3d 115, 122 (2d Cir. 2001) and *GAF Corp. v. Milstein*, 453 F.2d 709, 717 (2d Cir. 1971)), so that the shareholders "can evaluate the bidders' intentions in deciding whether to throw in their lot with them." Brf. 17-18 (quoting *Morales*, 249 F.3d at 123). Here, Repsol has alleged no such potential change in corporate control because that change has already occurred – via the Expropriation Process. Brf. 4-5, 18; Cplt. ¶¶ 18-20. Accordingly, the injunction sought by Repsol does not further Section 13(d)'s purpose of providing shareholders with information to evaluate a potential change in corporate control.

Significantly, Repsol fails to cite a single case in which a court enjoined a corporate shareholder (let alone a foreign sovereign) to make 13(d) disclosure where a change in corporate control has already been effected. *See* Opp. 16-24.[7] Nor does Repsol dispute that YPF has made abundant disclosures to the SEC about changes to YPF's management and governance and the Company's current and future business operations, including disclosure of the Company's 2013-2017 strategic business plan and other information that shareholders often disclose in 13(d) filings. *See* Brf. 18 and Scarvalone Declaration Exhs. A, B. The contention that the Republic has undisclosed business plans for YPF, *see* Opp. 19, is speculative, and fails to demonstrate that shareholders will be irreparably harmed absent an injunction requiring the Republic to provide more disclosure than what has already been made.[8]

Repsol's only response is to argue that the Complaint states a claim for a violation of Section 13(d), *see* Opp. 20, 21, but that is irrelevant. The point is not whether the Complaint states a claim under Section 13(d), but rather whether Repsol has established the

---

[7] *GAF Corp*. does not support Repsol's contentions, *see* Opp. 21, because that case did not involve a completed change in corporate control; rather, as Repsol acknowledges, *see id*., the case involved a failed attempt to obtain control via a proxy contest. *See* 453 F.2d at 714.

[8] Repsol's reliance upon *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd*., 598 F.3d 30 (2d Cir. 2010) is futile. *Citigroup* concerns the required showing for likelihood of success on the merits, *see id*. at 38 n.8, which is irrelevant to the Republic's dismissal motion.

- 8 -

requisites for injunctive relief, *see supra* at 7-8, Brf. 17.  If Repsol cannot establish an irreparable injury to the interests that Section 13(d) is intended to protect – namely, the interest in advising YPF shareholders of a potential change in corporate control – then Repsol cannot obtain the injunctive relief that it seeks.  *See supra* at 7-8, Brf. 17.  And since injunctive relief is the only relief that Repsol seeks in this lawsuit, *see* Cplt. ¶ 7, *id*. at 11 (Prayer for Relief), the failure to establish the requisites for such relief means that the Complaint should be dismissed.

## POINT IV

## VENUE IS IMPROPER

Having alleged that the only issue in this case is the Republic's compliance with Section 13(d), *see* Cplt. ¶¶ 7, 26, 28-30, Repsol is forced to argue the contrary, in a desperate effort to show that venue is proper in New York.  Suddenly, Repsol's claim is about an IPO that took place in 1993, and the impact of the Republic's expropriation of YPF shares on U.S. shareholders.  *See* Opp. 24-25.  But this about-face does not change the allegations of the Complaint: that the expropriation of YPF shares (in Argentina) created an obligation to make 13(d) disclosure, which the Republic did not file.  *See* Cplt. ¶¶ 7, 23, 26, 28-30.

"[F]or venue to be proper, *significant* events or omissions *material* to the plaintiff's claim must have occurred in the district in question, even if other material events occurred elsewhere."  *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005) (original emphasis).  There is only one alleged "event or omission" underlying Repsol's claim:  the Republic's decision not to make Section 13(d) disclosure in connection with the Expropriation Process, *see* Cplt. ¶¶ 23.  That decision occurred in Argentina, not in the United States, *see supra* at 3, and certainly not in New York.  There is simply no "significant event[] or omission[]" material to Repsol's claim that occurred in this District.

Repsol ignores the Second Circuit's decision in *Gulf*, relying instead on three breach of contract cases where payments and other aspects of performance of the contract occurred in New York.  *See* Opp. 25.  These cases are irrelevant because Repsol is seeking to enforce a regulatory requirement, not a contract.  As Repsol concedes, *id.,* Section 13(d) filings take place at the SEC in Washington, not in New York.  Venue is therefore improper under § 1391(f)(1).

## **CONCLUSION**

For all of the foregoing reasons, and the reasons set forth in the moving brief, the Complaint should be dismissed in its entirety.

Dated:  New York, New York
February 25, 2013

>Respectfully submitted,
>
>DOAR RIECK KALEY & MACK
>
>By:   /s/ Edward Scarvalone
>EDWARD SCARVALONE
>217 Broadway, 7th Floor
>New York, New York 10007
>Tel.:  (212) 619-3730
>Fax:  (212) 962-5037
>Email: escarvalone@doarlaw.com
>
>
>JONATHAN A. WILLENS LLC
>
>By:   /s/ Jonathan A. Willens
>JONATHAN A. WILLENS
>217 Broadway, 7th Floor
>New York, New York 10007
>Tel.:  (212) 637-3749
>Email: jawillens@briefworks.com
>
>*Attorneys for Defendant*
>*The Republic of Argentina*